IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-vs-<br><br>TERRY JAY OLSON,<br><br>Defendant. | **ORDER AND**<br><br>**MEMORANDUM DECISION**<br><br><br>Case No.  2:07-cr-199 TC |

Defendant Terry Olson has filed a Motion to Suppress Evidence seized pursuant to a search warrant issued by a state district judge.  Mr. Olson argues that the search warrant was not valid because the underlying affidavit failed to establish probable cause.

The court finds that the police officer reasonably relied on the warrant when executing the search because the affidavit laid out sufficient facts of potential criminal conduct, even if the affidavit did not establish probable cause.  This is not the type of case which demands exclusion of evidence to deter police misconduct.

The court DENIES Mr. Olson's motion to suppress.

**FINDINGS OF FACT[1]**

Detective Gubler and Detective Keil investigated Mr. Olson for potential involvement in narcotics distribution.  For a few weeks, the detectives observed Mr. Olson's Chevy Blazer parked at a particular St. George, Utah residence from 10:00 a.m. until midnight, as well as at

---

[1]All factual statements are taken from Detective Keil's Affidavit in Support of Search Warrant, attached as Exhibit A to Defendant's Memorandum in Support of Motion to Suppress ("Keil Aff.").

5:00 a.m., leading them to believe Mr. Olson lived at the residence.

After the investigation, Detective Keil submitted an affidavit describing facts which he believed established probable cause to support a search warrant for the residence.  In addition to the information about the Blazer, Detective Keil emphasized a trash sweep of the garbage can in front of the residence, which revealed a plastic bindle bag inside a cigarette pack with a white powdery substance that the detectives believed to be methamphetamine.  Detective Keil explained that he "usually found these items on drug users and drug dealers."  (Keil Aff. ¶ 5.) The detectives also found several baggies with suspected methamphetamine residue, as well as a few baggies with suspected marijuana residue.  At least one of the baggies tested positive for amphetamine compounds.  In the same trash can, the detectives also found a receipt with Mr. Olson's name on it.

Additionally, Detective Keil recited Mr. Olson's criminal history and the criminal history of three individuals believed to have ties with the same residence.  As indicated in the affidavit, Mr. Olson had been convicted of "possession of paraphernalia," and he had "pleaded guilty to two charges of possession with intent to distribute a controlled substance," in the previous ten years.  (Id. ¶ 6.)

Based on the affidavit, the judge signed a search warrant for the residence.  Detectives executed the warrant and discovered the evidence which Mr. Olson now seeks to suppress.

## ANALYSIS

Mr. Olson argues that the search violated his Fourth Amendment rights because Detective Keil's affidavit failed to establish probable cause.  But even if the affidavit did not satisfy probable cause, the detectives reasonably relied on the warrant issued by a neutral judge,

2

triggering the good faith exception to the exclusionary rule.

The court will not decide whether the affidavit established probable cause, but instead will only address the good faith exception to the exclusionary rule.  See United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000) ("In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question.").

The Supreme Court carved out the good faith exception to the exclusionary rule because "suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  United States v. Leon, 468 U.S. 897, 922 (1984).  In creating the exception, the Court emphasized that "the exclusionary rule is designed to deter police misconduct," id. at 916, so "suppression of evidence obtained pursuant to a warrant should be ordered . . . only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  Id. at 918.

When determining whether to apply the Leon exception, courts presume that an officer executing a warrant has acted in good faith.  United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985) ("The first notion to be remembered in considering the good faith principle is the presumption created in Leon that when an officer relies upon a warrant, the officer is acting in good faith.").  In such cases, suppression is only proper if "the executing officer should have known the search was illegal despite the state magistrate's authorization."  Danhauer, 229 F.3d at 1007.  But since "the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers," Cardall, 773 F.2d at 1133, courts "must determine whether the underlying documents

3

are 'devoid of factual support, not merely whether the facts they contain are legally sufficient.'"
United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993) (quoting Cardall, 773 F.2d at
1133).  Put another way, when an "affidavit contained sufficient facts at least to establish a
reasonable suspicion of criminal activity," the Tenth Circuit has held that "a reasonable
officer . . . would have assumed the search warrant was valid."  Id. at 1455 (emphasis added).

Nonetheless, "[a]n officer who knows or should have known that a search warrant was
invalid may not rely upon the good faith exception to immunize his subsequent seizure of
evidence."  Id.  Specifically, when an underlying affidavit completely fails to state facts which
support probable cause, a reasonable officer would not rely on the warrant.  Danhauer, 229 F.3d
at 1007 ("[T]he good-faith exception does not apply when the affidavit in support of the warrant
is 'so lacking in indicia of probable cause as to render official belief in its existence entirely
unreasonable.'") (quoting Leon, 468 U.S. at 923); see also United States v. Gonzales, 399 F.3d
1225, 1230 (10th Cir. 2005) ("[L]aw enforcement officials are presumed to have a reasonable
knowledge of the law, and we determine good faith in this context by considering whether a
'reasonably well trained officer would have known that the search was illegal despite the
magistrate's authorization.'") (quoting Leon, 468 U.S. at 922 n.23) (citations omitted).

Here, Detective Keil's affidavit presented facts which strongly indicated criminal
conduct, and the detective reasonably relied on the judge's determination that these facts
established probable cause.  Detective Keil made a good faith effort to comport with the
requirements of the Fourth Amendment by applying for a search warrant based on what he
perceived to be probable cause.  The supporting affidavit was not simply a series of conclusory
statements even though—as Mr. Olson points out—the affidavit did not explain why the

4

detectives were investigating either Mr. Olson or the residence, and amphetamine compounds may be legally possessed.  See United States v. Rowland, 145 F.3d 1194, 1207 (10th Cir. 1998) ("Despite the affidavit's failure to demonstrate a sufficient link between the contraband and Rowland's home for probable cause purposes, the affidavit as a whole was not a bare bones affidavit, containing only conclusory statements and completely devoid of factual support."); see also United States v. Martinez-Martinez, 25 Fed. Appx. 733, 737 (10th Cir. 2001) ("When determining whether Leon's good faith exception applies, the question is not what is absent from the affidavit, but what is present.").

Applying the McKneely standard that a police officer reasonably relies on a warrant if the affidavit creates at least a reasonable suspicion of criminal activity, the court concludes the detectives relied on the warrant in good faith.  See 6 F.3d at 1455.  The baggies with apparent residue, the baggie with amphetamine compounds, as well as Mr. Olson's connections to the residence and his criminal history of drug involvement, created a reasonable suspicion of criminal conduct.  The fact that the amphetamine compounds were in baggies—which are strongly associated with narcotics distribution—gives rise to a reasonable inference of criminal activity even though the compounds may be prescribed legally.  See United States v. Cervine, 347 F.3d 865, 871 (10th Cir. 2003) ("[W]e must examine the totality of the circumstances, meaning that reasonable suspicion may exist even if 'each of the[] factors alone is susceptible of innocent explanation.'") (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Accordingly, "[a]lthough the affidavit is weak, it establishes 'a minimally sufficient nexus between the illegal activity and the place to be searched.'"  United States v. Beck, 139 Fed. Appx. 950, 958 (10th Cir. 2005) (quoting Gonzales, 399 F.3d at 1230).

The evidence should not be suppressed because the detectives reasonably relied on the judge's probable cause determination when executing the warrant.

**ORDER**

For the foregoing reasons, Mr. Olson's Motion to Suppress Evidence (dkt. #21) is DENIED.

SO ORDERED this 7th day of August, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge